**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| HOWARD NEEDLE | : |
|    Plaintiff, | : |
| | : |
| | : |
| TRUE NORTH EQUITY, LLC and | : |
| TRUE NORTH BRANDS, LLC | : |
|    Defendants. | :      MARCH 12, 2019 |

## <u>PRELIMINARY STATEMENT</u>

1.      Plaintiff Howard Needle ("Plaintiff") brings this action to require

Defendants to pay him salary owed to him which Defendant failed to pay in violation of

the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. 201, et seq. (the "FLSA")

and Connecticut General Statutes §31-58 et seq.

## <u>JURISDICTION AND VENUE</u>

2.      This Court has jurisdiction of Plaintiffs' claims pursuant to 29 U.S.C. §

206(b), and 28 U.S.C. § 1331, and supplemental jurisdiction pursuant to 28 U.S.C.

§1367 in that the state law claims are so related to the federal claims that they form part

of the same case or controversy under Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because the

defendant does business in this district, and plaintiff resides in this district.

## <u>PARTIES</u>

4.      Plaintiff is a resident of the Town of Greenwich, County of Fairfield and

State of Connecticut.

5.      True North Equity, LLC is a Delaware limited liability company admitted to do business in the State of California, with its principal place of business at all time relevant to this Complaint in Santa Monica, California ("True North Equity") and which does business in the State of Connecticut.

6.      True North Brands, LLC is a Nevada limited liability company admitted to do business in the State of California with the same principal place of business as True North Equity ("True North Brands" and with "True North Equity", collectively referred to herein as "True North."), which does business in the State of Connecticut.

7.      Plaintiff was informed that True North Equity was converted into True North Brands, and the owners of the entities entered into operating agreements so providing.  Plaintiff's paychecks, however, continued to be paid by True North Equity, and that income and payroll tax returns continued to be filed by True North Equity.

8.      True North Equity and True North Brands are jointly and severally liable for all wage claims set forth herein as the co-employers of Plaintiff, and are jointly and severally liable for all contract claims set forth herein as the contracting parties or the successor to the same.

9.      At all times relevant to the Complaint, the plaintiff was an employee of the defendants as that term is defined by Connecticut General Statutes §31-58(f) and §31-71a (2) and Section 13(a)(1), 29 U.S.C. §213 of the FLSA.

10.     True North is an employer engaged in interstate commerce and is an employer as that term is defined under the FLSA, and an employer as that term is defined by Connecticut General Statutes §31-58(e) and §31-71a (1).

11.     True North is subject to personal jurisdiction of the courts of the State of Connecticut pursuant to Conn. Gen. Stat. §52-59b because True North did business in the State of Connecticut by contracting with Plaintiff to be an employee residing and working in the State of Connecticut and by contracting with entities in Connecticut to sell consumer products in the State of Connecticut.

## CLAIMS

12.     Plaintiff was hired by True North Equity as its Chief Financial Officer and entered into a contract for an annual salary of $240,000 pursuant to contract dated April 26, 2017.

13.     The parties intended that Plaintiff's primary place of work would be Connecticut.

14.     At the time of hiring and contracting to the present date, Plaintiff was and is a resident of the State of Connecticut.

15.     Plaintiff's address on his business card supplied by True North was his residence address in Connecticut.  He operated out of a home office in his residence. True North represented in documents and presentations that True North had a Greenwich Connecticut office. Since Plaintiff's residence was the only presence the company had in Greenwich, True North was referring to Plaintiff's residence as its Greenwich Connecticut office.

16.     Plaintiff commenced work for True North in late March 2017.

17.     The parties entered into an employment contract on May 1, 2017.

18.     Plaintiff performed various duties in addition to acting as Chief Financial Officer, including raising capital, developing business partnerships, negotiating strategic

relationships, and managing a line of business.  True North did not allow him to fully perform his duties as Chief Financial Officer by limiting his access to finances of True North and not allowing him perform the job duties and oversight commonly performed by Chief Financial Officers.  True North had him perform significant non-financial functions, particularly towards the end of 2017 when he was informed by the CEO of True North that the CEO and other employees located in California would be responsible for finance and accounting activities, including preparing tax returns and capitalization tables.

19.     At all times, Plaintiff performed his duties as assigned to him diligently and professionally, fully performing his obligations under his employment contract and all other assignments until he was terminated by True North.

20.     On or about March 16, 2018, Plaintiff was informed that True North was deferring $10,000 a month of Plaintiff's contractual salary for the months of April, May, June and July, after which he would again be paid $20,000 a month on a current basis.

21.     Plaintiff agreed to the temporary deferral with the understanding and mutual agreement that deferred amounts would be paid and he would be made whole after temporary deferment period ended.

22.     In April and May 2018, Plaintiff was paid $10,000 each month in salary, which was the last salary he received.  Plaintiff continued to perform services to True North, and True North accepted his services and benefitted from them.

23.     On October 9, 2018, Tim McGugan, acting CEO of True North, called Plaintiff and told Plaintiff that he would receive none of the promised compensation,

including the deferred amounts from April and May, and any compensation for the period of June 1 through the date of the call.

24.     Considering he had been told he would not be paid, Plaintiff performed no further work after the October 9 telephone call except to communicate management changes and business updates to certain True North investors.

25.     True North failed to pay the $10,000 a month of salary that was deferred from April to May 2018.

26.     True North failed to pay Plaintiff any salary in the months of June, July, August, September, and October through his date of termination.

27.     Plaintiff learned on November 6, 2018 that his employment had been terminated by True North when he received a notice of his right to continue his health insurance.

## Count One: Connecticut Minimum Wage Act

1– 27. The plaintiff re-states, re-alleges, and incorporates by reference herewith paragraphs 1 through 27 of this Count One.

28.     Plaintiff worked at least sixty hours a week from June 1 through the termination of his employment.

29.     Plaintiff worked approximately 1200 hours in this period without being paid any compensation.

30.     True North's failure to pay Plaintiff any compensation from June through the date of the termination of his employment is in violation of the Connecticut Minimum Wage Act, including Connecticut General Statutes §31-60.

31.     Pursuant to Connecticut General Statutes §31-68, Plaintiff is entitled to an award of twice the amount of the unpaid minimum wages earned in this period.

### Count Two: FLSA §206

1-30. The plaintiff re-states, re-alleges, and incorporates by reference herewith paragraphs 1 through 30 of Count One as paragraphs 1 to 30 of this Count Two.

31.     True North's failure to pay Plaintiff any compensation from June through the date of the termination of his is in violation of §206 of the FLSA.

32.     Pursuant to §216(b), Plaintiff is entitled to an award of twice the amount of the unpaid minimum wages

### Count Three: Connecticut Wage Payment

1.-30. The plaintiff re-states, re-alleges, and incorporates by reference herewith paragraphs 1 through 30 of Count One as paragraphs 1 through 30 of this Count Three.

31.     True North's failure to pay Plaintiff less than his contractual salary of $20,000 per month for the period of April 2018 to the termination of his employment is in violation of the Connecticut General Statutes §31-71a through 31-71e, and is actionable pursuant to Connecticut General Statutes §31-72.

32.      Pursuant to Connecticut General Statutes §31-72, Plaintiff is entitled to an award of twice the amount of the unpaid wages.

### Count Four: Breach of Contract

1.-30.  The plaintiff re-states, re-alleges, and incorporates by reference herewith paragraphs 1 through 30 of Count One above as paragraphs 1 through 30 of this Count Four.

31.     True North and Plaintiff contracted that he would be compensated $20,000 a month for his service as True North's Chief Financial Officer and the other duties he was assigned. Despite demand, True North has not paid Plaintiff his contractual compensation.

32.     True North breached its contract to pay Plaintiff $20,000 a month.

33.     Plaintiff has been damaged by True North's breach of contract.

### Prayer for Relief

Plaintiff hereby seeks the following relief from this court:

a. Unpaid minimum wages under the FLSA and Conn. Gen. Stat. §68;

b. All unpaid contractual wages pursuant to Conn. Gen. Stat. §31-72;

c. Liquidated damages in the amount of the unpaid minimum wages under the FLSA;

d. Double damages pursuant to Conn. Gen. Stat. §§ 31-68 and 31-72;

e. Damages;

f. Interest and costs;

g. Attorneys' fees;

h. Such other and further relief under law or equity as the Court deems

proper.

March 12, 2019                                PLAINTIFF
                                             HOWARD NEEDLE

                                             By: _____/s/_____
                                                  David S. Rintoul (ct08456)

                                                  Zeldes, Needle & Cooper, P.C.
                                                  1000 Lafayette Blvd., 7th Fl.
                                                  Bridgeport, CT 06604
                                                  Tel: 203-333-9441
                                                  Fax: 203-333-1489
                                                  Email: drintoul@znclaw.com