UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| HOWARD NEEDLE,<br><br>    Plaintiff,<br><br>v.<br><br>TRUE NORTH EQUITY, LLC and<br>TRUE NORTH BRANDS, LLC,<br><br>    Defendants. | No. 3:19-cv-372 (MPS) |

**RULING ON MOTION TO DISMISS**

Plaintiff Howard Needle brings this suit against Defendants True North Equity, LLC and True North Brands, LLC (collectively, "True North") to recover salary that he alleges True North failed to pay him in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), and Conn. Gen. Stat. §§ 31-58 *et seq.* Am. Compl., ECF No. 21. True North moves to dismiss the amended complaint under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction; in the alternative, True North requests that the action be transferred to the U.S. District Court for the Central District of California pursuant to 28 U.S.C. § 1404(a). ECF No. 23. For the reasons set forth below, I deny both the motion to dismiss and the motion for transfer.

**I.    FACTS**

  **A. Allegations in Amended Complaint**

The facts below are drawn from the plaintiff's amended complaint. I accept the allegations therein as true for the purposes of this motion, and I recount only the relevant jurisdictional facts.

Plaintiff Howard Needle, a resident of Greenwich, Connecticut, was hired by True North in late March 2017 to serve as its Chief Financial Officer for an annual salary of $240,000. Am.

1

Compl., ECF No. 21 ¶¶ 4, 12, 21. At the time of his hire, the parties "intended that Plaintiff's primary place of work would be Connecticut"—specifically, his home office in his residence. *Id.* ¶ 13. True North "knew Plaintiff was a resident of Connecticut at all times it was negotiating the terms of his employment with True North." *Id.* ¶ 22. While Needle began work for True North in "late March 2017," he "entered into an employment contract on May 1, 2017, which agreement was ratified by True North's acceptance of Plaintiff's services." *Id.* ¶¶ 21-22.

True North supplied Needle with business cards listing the address of his Connecticut residence and "represented in documents and presentations that True North had a Greenwich[,] Connecticut office." *Id.* ¶ 15. True North's Chief Executive Officer (Herminio Llevat) and its Chief Operations Officer (Niv Carmi) made investor presentations in Connecticut, referring to "Greenwich, CT as a True North office location[,] designating Plaintiff as the contact for Connecticut." *Id.* ¶ 19. Llevat and Carmi also "raised a significant amount of capital directly from Connecticut residents through private placement memorandums employing the Plaintiff's close network of high net worth individuals." *Id.* By the end of 2017, "approximately 23% of True North's investor base were Connecticut residents [as] a consequence of these presentations and private placement memorandums." *Id.* ¶ 20.

Needle performed the various duties assigned to him, "fully performing his obligations under his employment contract and all other assignments until he was terminated by True North." *Id.* ¶¶ 24. After the acting CEO of True North told Needle on October 9, 2018 that he would not receive his "promised compensation" for any of the past six months, Needle performed no further work for the company; he learned on November 6, 2018 that "his employment had been terminated by True North." *Id.* ¶¶ 28, 32. Plaintiff alleges that True North failed to pay him $20,000 in deferred compensation and failed to pay any salary—$20,000 per

month—in "June, July, August, September, and October [2018] through his date of termination." *Id.* ¶¶ 30–31.

   B. **Affidavits**

Both parties submitted affidavits in support of their briefing on the motion to dismiss: Needle submitted an affidavit about his engagement with True North, ECF No. 25 at 10, and True North's current CEO, Tim McGugan submitted a declaration about the same and about True North's lack of contact with Connecticut, ECF No. 17-1. In his affidavit, Needle avers that Llevat, then-CEO of True North, called him in March 2017 to ask him to work for True North as its CFO. Needle further attests that "Mr. Llevat was familiar with [Needle's] connections with investors in Connecticut, and [they] discussed that one of [Needle's] duties would be to raise investment capital from [Needle's] network in Connecticut." ECF No. 25 at 10.

McGugan, True North's current CEO, offers a declaration that contradicts some of the allegations in Needle's amended complaint. For instance, he states that "[n]either True North entity ever proclaimed it had offices in Greenwich, Connecticut in any documents, presentations, or otherwise." ECF No. 17-1 ¶ 15. McGugan's declaration also states that True North is not registered to conduct business in Connecticut, has never "purposefully marketed or sold goods to consumers within the state of Connecticut," does not own or use or possess real property in Connecticut, and never "contracted with a Connecticut entity for the purpose of selling goods in Connecticut." *Id.* ¶¶ 10–14.

Because the parties have not yet exchanged discovery, *see* ECF No. 28 (order staying discovery pending resolution of the motion to dismiss), I consider the affidavit and declaration but resolve all doubts in Needle's favor. *Corning Inc. v. Shin Etsu Quartz Prod. Co.*, 242 F.3d 364 (2d Cir. 2000) (table) (summary order noting that "the district court correctly treated the

3

allegations made by [the plaintiff] in its amended complaint as true, even though it also considered affidavits submitted by the parties"); *A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79–80 (2d Cir. 1993) ("But where the issue is addressed on affidavits, all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party.").[1]

## II.   LEGAL STANDARDS

In a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the "plaintiff bears the burden of showing the court has jurisdiction over the defendant," and the "burden is apportioned based on how far the case has progressed." *Corning Inc.*, 242 F.3d at *2. "Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith legally sufficient allegations of jurisdiction. At that preliminary stage, the plaintiff's *prima facie* showing may be established solely by allegations." *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990) (internal citations omitted).

---

[1] In its reply brief, True North incorrectly asserts that the plaintiff's allegations "lose any presumption of truth" because Needle did not rebut the allegations in McGugan's declaration. ECF No. 26 at 2. True North misstates the law. It cites *West World Media, LLC v. Ikamobile Ltd.*, in which the court noted that "[w]hen a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials . . . the allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits. However, if the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's *prima facie* showing is sufficient notwithstanding the contrary presentation by the moving party." 809 F. Supp. 2d 26, 29 (D. Conn. 2011) (internal citations and quotation marks omitted). *West World Media* explicitly states that any factual disputes—as there are in this case—are resolved in the plaintiff's favor. In any event, the Second Circuit has made explicit that district courts should treat allegations in a plaintiff's complaint as true, even if the court also considers affidavits submitted by the parties. *Corning Inc.*, 242 F.3d at *1–2 (addressing Rule 12(b)(2) motion and considering an affidavit from the defendant that "disputed a number of the allegations in [plaintiff's] complaint" and an affidavit from the plaintiff "that rebutted some, but not all, of the statements contained in [defendant's] affidavits").

"The district court has considerable procedural leeway in deciding 12(b)(2) motions, and it may accept affidavits if it so chooses." *Corning Inc.*, 242 F.3d 364 at *2 (internal quotation marks omitted). "[W]here . . . the district court relies solely on the pleadings and supporting affidavits, the plaintiff need only make a prima facie showing of jurisdiction." *Id.* "[W]here the issue is addressed on affidavits, all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor." *Whitaker v. Am. Telecasting, Inc.*, 261 F. 3d 196, 208 (2d Cir. 2001).

### III. DISCUSSION

"In assessing whether personal jurisdiction is authorized, the court must look first to the long-arm statute of the forum state. If the exercise of jurisdiction is appropriate under that statute, the court must decide whether such exercise comports with the requisites of due process." *Whitaker*, 261 F.3d at 208 (internal citations and quotation marks omitted).

#### A. Connecticut's Long-Arm Statute

The parties agree that Connecticut's general long-arm jurisdiction provision, Conn. Gen. Stat. § 52-59b, applies to foreign LLCs like True North. ECF No. 17 at 2; ECF No. 25 at 3; *Matthews v. SBA, Inc.*, 149 Conn. App. 513, 546 (2014) (holding that Connecticut's "general long arm jurisdiction provision, § 52-59b, rather than [Connecticut's] corporation specific long arm provision, § 33-929, applies to foreign LLCs"), *cert. denied*, 312 Conn. 917 (2014). Section 52-59b grants jurisdiction over any foreign entity that: "(1) Transacts any business within the state; (2) commits a tortious act within the state . . . ; (3) commits a tortious act outside the state causing injury to person or property within the state . . . ; (4) owns, uses or possesses any real property situated within the state; or (5) uses a computer . . . located within the state."

Conn. Gen. Stat. § 52-59b(a). To establish jurisdiction under this section, the plaintiff also must show that its cause of action arises from the defendant's business activity in the state. *Protegrity Corp. v. TokenEx, LLC*, No. 3:13-CV-1719, 2015 WL 222163, at *2 (D. Conn. Jan. 14, 2015).

The Connecticut Supreme Court has construed the phrase "transacts any business" broadly, to "embrace a single purposeful business transaction." *Ryan v. Cerullo*, 282 Conn. 109, 119 (2007). The plaintiff must show "some definitive act taken by the defendant that evinces a purposeful availment of the privileges of conducting the subject activity within the forum state and that, subsequently, invokes the benefits and protections of its laws." *Caro v. Fid. Brokerage Servs.*, No. 3:14-CV-01028 CSH, 2015 WL 1975463, at *13 (D. Conn. Apr. 30, 2015) (quoting *Walshon v. Ballon Stoll Bader & Nadler, P.C.*, 121 Conn. App. 366, 372 (2010)). Courts "do not apply a rigid formula" in determining whether a business transaction qualifies as purposeful; rather, courts are instructed "to examine the nature and quality, rather than the amount of Connecticut contacts to determine whether there was purposeful activity." *Dunne v. Doyle*, No. 3:13-CV-01075, 2014 WL 3735619, at *7 (D. Conn. July 28, 2014).

In determining whether a single contract can serve as the basis for personal jurisdiction, courts have looked to the following factors:

> (1) whether the defendant entered into an ongoing contractual relationship with a Connecticut-based plaintiff;
> (2) whether the contract was negotiated in Connecticut;
> (3) whether, after executing a contract with the defendant, the defendant visited Connecticut to meet with the plaintiff or communicated with the plaintiff as part of the contractual relationship; and
> (4) whether the contract contains a Connecticut choice-of-law provision.

*Dunne*, 2014 WL 3735619, at *7. In *Doyle Grp. v. Alaskans for Cuddy*, the court found that forming a single contract with the plaintiff, who agreed to provide consulting services from Connecticut, and mailing checks to the plaintiff in Connecticut constituted a purposeful business

6

transaction and established personal jurisdiction over the defendant. 146 Conn. App. 341, 349 (2013).

Here, Needle contends that True North is subject to personal jurisdiction because True North "knowingly contracted with a Connecticut resident for services to be performed in Connecticut, and the claims in the lawsuit are directly related to those Connecticut-performed services." ECF No. 25 at 5. True North argues that it did not transact any business in Connecticut or meet any other requirement under the long-arm statute. ECF No. 17 at 3; ECF No. 23-1 at 2. Taking as true the allegations in his amended complaint, I find that Needle has made a prima facie showing that True North transacted business within Connecticut. First, Needle alleges that he formed an employment contract with True North for services to be performed in Connecticut.[2] *See* Am. Compl., ECF No. 21 ¶¶ 21–22 ("The parties entered into an employment contract on May 1, 2017, which agreement was ratified by True North's acceptance of Plaintiff's services."); *id.* ¶ 13 ("The parties intended that Plaintiff's primary place of work would be Connecticut."). The factors set forth in *Dunne* suggest that this contract constituted purposeful business activity. Needle worked for True North—in his home office in Connecticut—from late March 2017 until October 2018, *id.* ¶¶ 21, 29, and True North paid him a salary through May 2018, *id.* ¶ 27, so the relationship was ongoing for fourteen months at the very least. Needle does not allege where the negotiations took place, and there are no allegations or evidence of a choice-of-law provision in

---

[2] True North claims that it did not form a contract with Needle because the offer of employment, ECF No. 17-2, was never signed. *See* ECF No. 17 at 1 (arguing True North "never contracted with a Connecticut individual"). But as Needle points out, employer-employee relationships all involve an "implied contract of employment," regardless of the presence of an express or written contract. *Torosyan v. Boehringer Ingelheim Pharm.*, Inc., 234 Conn. 1, 13 (1995). Needle has clearly alleged that he formed an employment agreement with True North under which he would serve as a Chief Financial Officer and True North would pay him a salary. True North did pay him a salary for fourteen months. Those allegations suffice to show an employment contract.

7

the employment contract, so those factors are neutral. *See* ECF No. 17-2 (non-executed written offer of employment). Needle also alleges that True North executives "made investor presentations in Connecticut," and used "private placement memorandums employing the Plaintiff's close network of high net worth individuals," suggesting that the defendant did visit Connecticut in connection with Needle's employment. Am. Compl., ECF No. 21 ¶ 19. Two of the four factors therefore weigh in favor of Connecticut's exercising personal jurisdiction.

Needle's allegations also distinguish this case from *Statek Corp. v. Coudert Bros. LLP*, No. 3:07-CV-00456 (SRU), 2018 WL 834227 (D. Conn. Feb. 12, 2018).[3] In *Statek Corp.*, the defendant "never had an office in Connecticut," "did not regularly solicit or do business in Connecticut," and performed services for its Connecticut clients outside of the state, so the court held that the defendant's "out-of-state business for a Connecticut client does not subject it to jurisdiction in Connecticut." 2018 WL 834227, at *14. In this case, by contrast, Needle alleges that True North advertised to investors that it had a Greenwich, Connecticut office, which was Needle's home office. *Id.* ¶ 15 ("True North represented in documents and presentations that True North had a Greenwich[,] Connecticut office" and provided Needle with business cards listing his residence address in Greenwich); *id.* ¶ 19 (In presentations to investors, True North "referred to Greenwich, CT as a True North office location designating Plaintiff as the contact for Connecticut."). Further, True North allegedly raised a substantial portion (23%) of its capital from Connecticut residents, largely as a result of Needle's personal network. ECF No. 21 ¶¶ 19–20; *see also* Needle Aff., ECF No. 25 at 10 (averring that Needle and CEO Llevat "discussed that

---

[3] True North also cites *Izzo v. Sandy Alexander, Inc.*, No. 3:17-cv-02060, 2018 WL 4426040 (D. Conn. Sept. 14, 2018), to support its argument that it did not transact business in Connecticut. That case in inapposite because it analyzes a different long-arm statute, Conn. Gen. Stat. § 33-929(f).

one of [Needle's] duties would be to raise investment capital from [his] network in Connecticut"). And he alleges that True North did business within the state, sending private placement memorandums to Connecticut residents and making investor presentations in the state. *Id.* ¶ 19. These allegations suggest that True North purposefully availed itself of the privileges of conducting business within Connecticut by representing to potential investors that they had a local office and contact person.

Needle has thus sufficiently alleged that True North transacted business in Connecticut, within the meaning of Conn. Gen. Stat. § 52-59b. And his causes of action arise from those same business activities in Connecticut: his claims all relate to his employment contract and True North's failure to pay him either minimum wages or contractual wages despite his performance under the contract. Therefore, Needle has made a prima facie showing that personal jurisdiction over True North is authorized by Connecticut's long-arm statute.

### B. <u>Due Process</u>

True North also argues that exercising jurisdiction over True North would violate due process. ECF No. 17 at 4. "If the long-arm statute permits personal jurisdiction, the second step is to analyze whether personal jurisdiction comports with the Due Process Clause of the United States Constitution." *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010). "This analysis has two related components: the 'minimum contacts' inquiry and the 'reasonableness' inquiry." *Id.*

#### 1. *Minimum Contacts*

Under the minimum contacts analysis, the court "must determine whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction." *Id.* (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "For purposes

of this inquiry, a distinction is made between 'specific' jurisdiction and 'general' jurisdiction." *Id.* Here, the True North asserts, and Needle does not dispute, that True North is not subject to general jurisdiction, and so I focus on whether there is specific jurisdiction. "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 283–84 (2014) (citation and internal quotation marks omitted). "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Id.* at 284. "[T]he relationship must arise out of contacts that the 'defendant himself' creates with the forum State." *Id.* And the analysis must "look[] to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* Accordingly, the Supreme Court has upheld the exercise of jurisdiction over "defendants who have purposefully 'reach[ed] out beyond' their State and into another by . . . entering a contractual relationship that 'envisioned continuing and wide-reaching contacts' in the forum State." *Id.* at 285 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479–80 (1985)).

As discussed above, Needle has alleged that True North reached out to him to hire him to work while knowing he lived in Connecticut, that it entered a contractual relationship with him in order to raise investment capital from Needle's network in Connecticut, that its executives made investor presentations in Connecticut and sent private placement memorandums to Connecticut residents, and that it referred in presentations to Needle's residence as its Connecticut office. Am. Compl., ECF No. 21 ¶¶ 12–13, 19; Needle Aff., ECF No. 25 at 10. He also alleges that True North raised 47% of its limited partnership funds in 2017 from Connecticut residents. ECF No. 21 ¶ 20. Contrary to True North's argument that it did not "purposefully

10

avail[] itself to the privilege of conducting activities within Connecticut," ECF No. 17 at 6, Needle's allegations show that True North's suit-related conduct—conduct related to its employment agreement with Needle—created a substantial connection with Connecticut. *See Vertrue Inc. v. Meshkin*, 429 F. Supp. 2d 479, 496 (D. Conn. 2006) (holding that defendant's "seeking out Plaintiff as a potential business partner, making two trips to Connecticut for the purpose of inducing Plaintiff to enter into an agreement with his Companies and maintaining regular communications with Plaintiff in Connecticut up to and after the execution of the Agreement" created a "substantial connection with the forum such that [defendant] should reasonably anticipate being haled into court there").

### 2. *Reasonableness*

Finally, exercising personal jurisdiction over True North is reasonable. Under this prong, courts "ask whether the assertion of personal jurisdiction comports with 'traditional notions of fair play and substantial justice'—that is, whether it is reasonable to exercise personal jurisdiction under the circumstances of the particular case." *Chloe*, 616 F.3d at 164. "The Supreme Court has held that courts must evaluate the following factors as part of this 'reasonableness' analysis":

> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.

*Id.* (citing *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113–14 (1987)). "While the exercise of jurisdiction is favored where the plaintiff has made a threshold showing of minimum contacts at the first stage of the inquiry, it may be defeated where the defendant presents a

compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* at 165 (citation and internal quotation marks omitted).

True North has not made a compelling case that jurisdiction in Connecticut is unreasonable. It argues that the burden of litigating in Connecticut is substantial since it "operate[s] out of offices literally across the country from Connecticut," ECF No. 17 at 7, but Needle's allegations suggest that its executives traveled to Connecticut to make investor presentations. ECF No. 21 ¶ 19. True North claims that the second and fifth factors are neutral, but that the fourth factor favors California because "True North's principal place of business is located there and presumably, any witnesses other than Needle are located there as well." ECF No. 17 at 6–7. But it is far from clear that all the relevant witnesses other than Needle would be located in California, and True North does not offer any support for this statement. For instance, some of the Connecticut investors could have relevant testimony on this issue of Needle's performance under the employment contract. The fourth factor also does not necessarily favor the defendant's home state, because where the "relative conveniences of litigating in Connecticut and [defendant's home state] reduce essentially to the balance between the interests of the parties themselves in litigating in their respective home states, [i]t would not, in these circumstances, offend the due process clause to subject [D]efendant[ ] to suit in this district." *Vertrue Inc.*, 429 F. Supp. 2d at 496 (internal quotation marks omitted). The second factor also likely favors Connecticut as the forum state, since "a state frequently has a manifest interest in providing effective means of redress for its residents," and Needle seeks redress for breach of contract and violation of, among others, Connecticut's wage statutes. *Chloe*, 616 F.3d at 173.

Like the court in *Chloe*, I find that True North's "generalized complaints of inconvenience arising from having to defend [it]self from suit in [Connecticut] do not add up to a

compelling case that the presence of some other considerations would render jurisdiction unreasonable." 616 F.3d at 173. Therefore, I find that asserting personal jurisdiction over True North comports with "traditional notions of fair play and substantial justice" and satisfies the reasonableness inquiry under the Due Process Clause.

***

Because Needle has met his prima facie burden of showing that personal jurisdiction is authorized under Connecticut's long-arm statute and consistent with due process, I find that the Court may properly exercise personal jurisdiction over True North, and I deny True North's motion to dismiss on this ground.

## IV. ALTERNATIVE MOTION TO TRANSFER

True North also moves, in the alternative, to transfer venue to the U.S. District Court for the Central District of California under 28 U.S.C. § 1404(a). Motions to transfer under § 1404(a) require a two-part inquiry: (1) whether the action could have been brought originally in the district to which the movant seeks to transfer the case, and (2) whether the transfer promotes the convenience of the parties and the interest of justice. *Rest. Supply, LLC v. Pride Mktg. & Procurement, Inc.*, No. 3-16-CV-1270, 2017 WL 3444677, at *3 (D. Conn. Aug. 10, 2017). The burden is on the moving party to make a "clear and convincing showing" that transfer is desirable. *Id.*; *see also Ford Motor Co. v. Ryan*, 182 F.2d 329, 330 (2d Cir. 1950) (interpreting § 1404(a) to require defendants to make "a strong case for a transfer").

Though Needle does not address the alternative motion to transfer in his opposition brief, I find that True North has not met its burden as the moving party. A plaintiff's choice of forum is afforded substantial weight. *Warrick v. General Electric Co.*, 70 F.3d 736, 741 (2d Cir. 1995). "Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should

rarely be disturbed." *Argent Funds Grp., LLC v. Schutt*, No. 3:05 CV 01456, 2006 WL 2349464, at *3 (D. Conn. June 27, 2006) (quoting *Ford Motor Co.*, 182 F.2d at 330). True North's discussion of this alternative motion is cursory, stating without support that "Defendants' principal place of business, all relevant documents and evidence, and all witnesses except the Plaintiff are located in Santa Monica, California." ECF No. 17 at 8. While these factors are relevant on a transfer motion, a party moving for transfer on the basis of the convenience of witnesses "must specifically identify witnesses in the transferring district upon which it will rely and state the likely contents of their testimony." *Labonte v. TD Bank, N.A.*, No. 3:10-CV-1335, 2011 WL 3930296, at *2 (D. Conn. May 11, 2011). True North has not done so.

Because True North has not made the requisite "clear and convincing" showing that a transfer of venue would promote the "convenience of parties and witnesses, in the interest of justice," I decline to disturb the plaintiff's choice of forum and deny True North's motion to transfer.

V. **CONCLUSION**

For the foregoing reasons, True North's [23] motion to dismiss is DENIED. The request, in the alternative, to transfer under 28 U.S.C. § 1404(a) is also DENIED. In light of this disposition, discovery shall commence immediately, and the parties shall file a Rule 26(f) report **within 14 days**. *See* ECF No. 28.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated: Hartford, Connecticut
April 1, 2020

14